## McGeough v. Lewis.

(Decided May 24, 1932.)

LOUIS REUSCHER and RUESCHER & RUESCHER for appellant.

LESLIE W. MORRIS for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

The appellee, Frank Dailey Lewis, by his father and next friend, brought this action against the appellant for damages for personal injuries he received in an automobile accident. He recovered a verdict of $2,-163.60, and, from the judgment entered on that verdict, this appeal is prosecuted.

On August 25, 1929, shortly after the noon hour, the appellee, a boy of about 14 years of age, and his younger brother, Charles Lewis, then about 12, left the residence of Mrs. Margaret O'Brien, situated in the

south side of the Frankfort and Versailles highway about 2½ miles to the eastward from Frankfort. The boys had been doing some chores for Mrs. O'Brien, and having finished them, purposed going in to Frankfort. As they came out of the yard and crossed the interurban track which is located between Mrs. O'Brien's front gate and the highway, they noticed a truck of the state highway department coming from Versailles on the east towards Frankfort on the west. The appellee stopped on the south side of the highway and faced towards Versailles, watching the approach of the truck of the state highway department. His younger brother crossed the highway to the other side for the purpose of flagging the truck as it approached. While the boys were in these respective positions, the appellant, driving his light six Studebaker sedan, came from Frankfort towards Versailles. He was, of course, on the same side of the highway as was the appellee. He saw the appellee standing by the side of the road facing towards Versailles and with his back towards appellant's approaching machine. The appellee and his witnesses testify that appellee was standing very close to the paved portion of the highway. Indeed, appellee says that he was standing on some crushed rock which forms the shoulder of the highway and within a foot of the paved portion of the highway. On the other hand, appellant and his daughter, a girl about 14 years of age who was seated on the front seat of the sedan with her father, testify that the appellee was over in the grass some four to six feet away from the paved portion of the highway. Appellee testifies, and he is corroborated by his brother, that appellant did not sound his horn as he approached the appellee. On the other hand, appellant and his daughter testify that appellant did sound his horn, but, even if this be so, his own testimony establishes that the sounding of the horn evidently made no impression on appellee for he showed no evidence at the time of having heard it. All the witnesses agree that appellee stood still in his tracks as appellant's car approached and even began passing the boy. The appellee testified that he never moved out of his tracks until he was struck. None of his witnesses saw how the accident actually happened. Appellee admitted that he never knew of the presence of the appellant's car until after he had been struck. The front of appellant's car passed the appellee safely, but the evidence very satisfactorily establishes that the iron

handle of the rear right-hand door of the sedan struck appellee's head behind the left ear with such force as to break that handle off and to leave it embedded in the boy's head. Appellant did not know that the boy had been struck until his daughter called his attention to that fact. She testifies that as the machine passed the boy she observed him turning, and then she saw his overalls fly up in the air and heard the thud of the boy's body as it hit the ground. He was found lying, at least partially in the paved portion of the road. Those who came up to assist pulled the iron handle which had broken off and which was embedded in his head out of the wound and threw it into the grass. The boy was taken into the hospital at Frankfort, where it was discovered that his skull had been fractured and an operation trephining the skull was resorted to. A portion of the skull had to be removed and it has never been replaced. The doctors testify that the boy will suffer all through his life with severe headaches, as indeed the boy himself testifies he has so suffered since the accident.

Appellant insists on a reversal first, because, as he says, he was entitled to a peremptory instruction. He grounds this contention on the proposition that it was not shown that he had violated any duty he owed to the appellee, in that it was not shown that he was going at an unreasonable rate of speed, and that it was shown without contradiction that he was keeping a lookout ahead, that he had his machine under control, and that he gave warning of his approach. As to the last proposition, of course, there was some dispute in the evidence. From all of this he argues that, especially as the running board did not hit appellee, the accident must have been caused by the appellee walking into the side of the car in an effort to cross the road to catch the truck. But appellant fails to take into account that from the evidence the jury had a right to believe, first, that appellee was standing within one foot of the paved portion of the highway; secondly, that appellant should have realized, even if he did sound his horn, that appellee was not conscious of it; thirdly, that appellee never moved from his tracks—from all of which it could rightly deduce that appellant either drove off the paved portion of the highway or drove so near to its edge as that either the swaying of the machine caused the door handle to strike the boy or the air suction that any

rapidly moving body creates sucked the boy's body in and towards the car and caused his head to be hit as it was, even though the running board did not touch him. This being so, the jury could rightly conclude that appellant in the exercise of ordinary care should not have driven so closely to the boy who was oblivious of the approach of the car when the slightest deviation of the car from the traveled portion of the highway or the suction of the passing car would probably cause the body of the boy to come in contact with the car. It follows that it was clearly for the jury to say whether, under these circumstances, appellant exercised ordinary care in driving as he did, and hence the court did not err in overruling appellant's motion for a peremptory instruction. Cf. Tri-State Refining Co. v. Skaggs, 223 Ky. 731, 4 S. W. (2d) 739; Biogini v. Steynen, 124 Md. 369, 92 A. 806; Hall v. Panciera, 136 A. 332, 5 N. J. Misc. R. 281.

Appellant next contends that the instructions which the court did give were erroneous. He complains of instruction No. 1, which is the usual instruction given in these cases of a collision between an automobile and a pedestrian, because, as he says, there was no testimony of any kind that appellant did not give timely or reasonable warning of his approach. Appellant is in error as to that, for appellee testified, and was corroborated by his brother, that no horn was sounded. He further complains that in instruction No. 1 the court told the jury that it was the duty of the appellant to exercise ordinary care to avoid injuring the plaintiff; the court failing to define what was ordinary care. However, in instruction No. 4, the court correctly defined the term "ordinary care." It is true appellant criticizes this instruction thusly: "It defines ordinary care or the failure to use ordinary care to be negligence." Counsel's complaint is based on an erroneous assumption for the instruction as given defines ordinary care in exactly the same language as counsel for appellant contends to be the correct definition.

Appellant further contends that the instruction on contributory negligence which he offered should have been given, but the court did give an instruction on contributory negligence which was indeed more favorable to appellant than he had a right to expect, since it held appellee to the exercise of the same degree of

care as an adult would exercise rather than that of a boy of his age and experience.

He further complains of instruction No. 2 on the theory that the court should not have submitted to the jury the issue whether or not appellant had suffered a permanent impairment of his power to earn money; it being argued that there was no evidence to sustain such an issue. However, the evidence disclosed that in all probability this boy would, throughout life, continue to suffer severe headaches, as indeed he testified he had suffered since the accident, and the jury as a group of reasonable men had the right to conclude from this that the boy's power to earn money in the future would be permanently impaired for one who is afflicted as the physicians say this boy will be is not as efficient as one who is free from such affliction, and power to earn money in this modern day in large part depends on one's efficiency. Cf. W. G. Duncan Coal Co. v. Lock, 205 Ky. 747, 266 S. W. 640, a fracture of the skull case.

There being no error prejudicial to appellant's substantial rights, the judgment is affirmed.